NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0247n.06

Case No. 20-3821

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>DONNAMARIE KAMINSKY,</td><td>)</td><td rowspan="5"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
</table>

DONNAMARIE KAMINSKY,                )

     Plaintiff-Appellant,              )

v.                                                          )      ON APPEAL FROM THE UNITED
                                       )      STATES DISTRICT COURT FOR
                                       )      THE NORTHERN DISTRICT OF

ROBERT WILKIE, Secretary of the U.S.   )      OHIO
Department of Veterans Affairs,             )
                                       )
     Defendant-Appellee.                     )
                                       )

FILED
May 20, 2021
DEBORAH S. HUNT, Clerk

BEFORE: SILER, THAPAR, and MURPHY, Circuit Judges.

**SILER**, Circuit Judge. DonnaMarie Kaminsky appeals the district court's judgment for the Secretary. Kaminsky claims that the district court erred in granting summary judgment for her disability and age discrimination claims, her failure to accommodate claim, and her retaliation claim.

Kaminsky's claims for disability and age discrimination are not supported on the record, and many of the employment actions raised as proof of discrimination are not actionably adverse. Kaminsky also fails to show any causal connection between her age, disability, or protected actions with any of those employer actions by the VA and her supervisor, Debra King, that she claims were adverse. The VA made multiple attempts to provide Kaminsky with her requested accommodations, including a sit-to-stand desk. Whether Kaminsky was otherwise qualified for

her position, which her supervisors believed she was not under Ohio law, has no actual bearing on the outcome of this case because no actionable discrimination occurred. We AFFIRM.

I.

Kaminsky began working at the VA in 2001 as an education and training specialist in Chaplain Services. In 2004, the VA created a new position specifically for Kaminsky within the Social Work Service (SWS) because of her interest in grief and bereavement counseling. The VA categorized the position as "Training Specialist," but the organizational descriptive title was "Grief/Bereavement Counselor & Educator." This position included counseling veterans and family members. She also provided grief counseling to veterans outside of the contract home hospice program and to VA staff members. Kaminsky's paygrade in this position was GS-12.

Kaminsky's official duty station was the VA Wade Park Medical Care Center in Cleveland, but she spent most of her time seeing patients in the community, not at her office. She had an office at Wade Park that was borrowed by SWS from the Blind Rehabilitation Service. That office was located at a different part of the medical center than the rest of SWS. Kaminsky was assigned a GSA vehicle for travel to her counseling sessions with patients in their homes.

In May 2016, the VA assigned Debra King as the Assistant Chief of SWS. Since joining the VA in 2008, no other employee, besides Kaminsky, ever complained that King treated them unfairly or had ever filed a discrimination complaint against King, nor had she been disciplined for any reason. King met with Kaminsky to review Kaminsky's job functions, review her tour of duty, and discuss the approval of compensatory time off. Following this meeting, King believed that Kaminsky was within the program guidelines and doing her job appropriately. However, during the meeting, Kaminsky became agitated and upset and raised her voice at King. Kaminsky claims that King rattled off "I'm changing your job, I'm changing your work hours, I'm moving

you from your office, I'm not giving you comp time. I'm changing everything about your job. You're not going to work alone. Everything about your job is going to be changed." Kaminsky and King had little to no contact after the meeting. Kaminsky notified King she would be filing an EEO complaint.

King learned that, although Kaminsky had been working as a grief counselor since 2004, she was not licensed by the Ohio Counselor, Social Worker, and Marriage and Family Therapist Board (Ohio Board). *See* Ohio Rev. Code § 4757.23. In November 2016, the Geriatrics and Gerontology Federal Advisory Committee (GGAC) conducted a periodic site visit. King was informed that VA regulations did not authorize the post-grief counseling services that Kaminsky was providing to families of deceased veterans. Upon further investigation, King discovered that the VA did not have legislative authority to provide bereavement counseling to non-veteran family members. King, King's supervisor, Joe Aquilina, and Human Resources (HR) Classification Specialist Eric Johnston attempted to rewrite Kaminsky's position description to (1) eliminate any counseling so that Kaminsky's position complied with Ohio state law and VA regulations; and (2) maintain Kaminsky's grade as GS-12 so that her pay and benefits would not change. Despite drafting several updated position descriptions, King and Aquilina were informed that removing her counseling duties would reduce Kaminsky's GS-12 grade level.

The issue was elevated and after conferring with Chief of Staff, Murray D. Altose, M.D., head of HR Charles Franks, and Medical Center Director Susan M. Fuehrer, the leadership decided to move Kaminsky to a different position in HR where she could maintain her GS-12 grade. Franks notified Kaminsky of the change on July 18, 2017, and she received official word of her reassignment change on July 31, 2017. Kaminsky was informed her new position, beginning on September 3, 2017, would be Human Resources Specialist (Employee Education and

Development). For the time between the transition, Kaminsky was offered the opportunity to work on a project with Jason Gatliff, the Integrated Ethics Program Officer, involving the roll-out and implementation of a life-sustaining treatment program at the VA. Kaminsky declined to work on this project, however, and Dr. Altose told King to assign Kaminsky administrative tasks until she started her new position in HR. Kaminsky's previous grief counseling position was eliminated and neither her salary nor any of her benefits decreased because of her move to HR. On February 28, 2020, Kaminsky retired from the VA.

Due to various injuries to her spine and knee, Kaminsky suffered chronic pain that required the use of a cane since 2012 and walker since 2019. The VA obtained a special GSA-assigned vehicle, after a request in 2015, to help with her pain. On April 20, 2016, the VA approved Kaminsky for a sit-to-stand desk. While this request was being processed, King and Aquilina decided to move Kaminsky to the fifth floor of the Administration Building at Wade Park. King and Aquilina informed Kaminsky about the change in June of 2016 and the move was made about a month later.

Bruce Kafer, the local Reasonable Accommodation Coordinator, emailed Kaminsky on August 9, 2016, telling her that her request for a sit-to-stand desk was "in process" and that the desks "may be back ordered." On August 15, 2016, John McNerney, the assigned interior designer at the VA, told Aquilina in an email that he had attempted to reach Kaminsky about her request for a sit-to-stand desk "on a number of occasions with no success." Kaminsky replied to McNerney's email on August 23, 2016. She disclosed to McNerney and Kafer that she filed an equal opportunity complaint (EEOC) against King and Aquilina and explained that she still needed the desk but had been delayed in her response because she could not use her assigned office space.

The next day, Kafer emailed the ergonomic design team again and told them "we need to install the appropriate Sit to Stand Desk in Ms. Donnamarie Kaminsky's new office . . ."

On September 20, 2016, Kaminsky and Kafer exchanged emails about setting up a call to discuss her ergonomic needs. Kaminsky reiterated that she was not using the office space assigned to her. Kaminsky was assigned a new office space in the VA's Parma Community Based Outpatient Clinic (CBOC). McNerney had a sit-to-stand desk installed for Kaminsky on November 8, 2016. Parma remained Kaminsky's official duty station from November 2016 through July 2017. Kaminsky continued to report issues with her sit-to-stand desk and the VA made repeated attempts to correct all problems reported. The VA ultimately was able to resolve the issues satisfactorily and accommodate Kaminsky.

In 2019, Kaminsky filed this suit against Defendant Robert Wilkie, Secretary of the VA, in the district court. She included claims for (1) disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-94; (2) age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633a; (3) failure to accommodate under the Rehabilitation Act; (4) hostile work environment under the Rehabilitation Act and ADEA; and (5) retaliation under ADEA and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2000e-17.

The district court granted the Secretary's motion for summary judgment in 2020, and Kaminsky timely appealed.

## II.

We review the granting of summary judgment de novo. *Sec'y of Labor v. Timberline S., LLC,* 925 F.3d 838, 843 (6th Cir. 2019).

III.

A.

To make a claim for disability discrimination under the Rehabilitation Act, a plaintiff must show that she is (1) disabled; (2) otherwise qualified to perform the essential functions of her position; and (3) suffered an adverse employment action solely because of her disability. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). To make a claim for age discrimination under the ADEA, a plaintiff must show that she (1) is forty years or older (protected class); (2) suffered an adverse employment action; (3) was otherwise qualified for the position; and (4) was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age. *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). In addition, the ADEA requires a showing that age was the "but-for" cause of any adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

Kaminsky highlights as discriminatory four actions of the VA in her brief: (1) the move of her office space; (2) the "hospice oversight committee," (3) the denial of advanced sick leave, and (4) her transfer to HR.

King's movement of Kaminsky's office space from the Blind Rehabilitation space into a cubicle does not constitute an adverse employment action because it is the kind of mere annoyance or "petty slight that [courts] have held does not constitute actionable harm." *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1078-79 (8th Cir. 2010) (citation omitted); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) (holding a less desirable workspace did not amount to a "materially adverse employment action" as compared to a reduction in salary, status, or employment benefits). The move put Kaminsky in the same location and a similar office space as the rest of her colleagues and there is no evidence that Kaminsky's age or disability had any

bearing on King's office relocation decision. Rather, it seems King's main motivation was to relocate Kaminsky to the same geographical area as the rest of her department rather than to a satellite location. Kaminsky's claim that having to pack her own boxes and move from her office was an adverse employment action has no basis in law. Ultimately, an employee named Michael Jennings helped with her move.

There is no evidence that the creation of a follow-up template for veterans in the hospice program by the hospice oversight committee had any adverse effects on Kaminsky's employment nor that it was created or influenced due to age or disability discrimination. Kaminsky attended the group's only meeting on November 16, 2016. She claims without evidence that she was excluded from other alleged committee meetings and that a draft template evaluating whether veterans "wanted to have services from Ms. Kaminsky in their homes" adversely affected her employment but fails to explain why asking veterans that question is objectionable in the first place. An email from Gatliff states that "I discussed our meeting with Debra [King] and she agreed that DonnaMarie made a good point. It does make good sense to have DonnaMarie contact each Veteran early . . . and introduce herself and the services she has to offer." This email negates Kaminsky's claim that she was excluded and not allowed to provide any input to the committee. Further, Kaminsky provides no evidence that her age or disability caused the creation of the committee, influenced its decisions, or affected its findings.

Kaminsky complains of an instance in July 2016 where her request to use advanced sick leave was initially denied by King because Kaminsky's sick leave balance was negative. After being informed that Kaminsky previously was approved to use advanced sick leave, King approved the request, and Kaminsky used the sick leave. Separate authorities later denied Kaminsky approval for advanced sick leave because she already had a negative balance of -166.5

hours and had developed a pattern of requesting advanced sick leave on a regular basis for four years. Both Aquilina and Employee/Labor Relations Specialist Jelena Zekanovc recommended against approving the request based on VA policy and Kaminsky's use of advanced sick leave on a yearly basis since 2012. Therefore, Kaminsky instead had to use annual leave. Kaminsky offers no evidence to support that King was involved in the process or how a denial of advanced sick leave based on VA policy guidelines was discriminatory.

Kaminsky's provides no evidence that discrimination based on her age or disability caused her relocation to HR. King was concerned that Kaminsky was not licensed by the Ohio Counselor, Social Worker, and Marriage and Family Therapist Board (Ohio Board). *See* Ohio Rev. Code § 4757.23. She also was concerned about the GGAC's findings that VA regulations did not authorize the post-grief counseling services that Kaminsky was providing to families of deceased veterans and that the VA did not have legislative authority to provide bereavement counseling to non-veteran family members. King, Aquilina, and Johnston attempted to rewrite Kaminsky's position description to conform with proper standards while maintaining her pay grade. Despite several attempts, King and Aquilina were ultimately informed that Kaminsky's position could not conform to the VA standards without reducing her pay grade. They instead made the difficult decision, after confiding with their own leadership, to relocate Kaminsky to HR to maintain her current GS-12 status. There is no evidence that age or disability discrimination caused Kaminsky's transfer to HR or the elimination of her former position.

The district court held that "Kaminsky fails to point to any evidence here of causation— that is, any evidence that these events, individually or in the aggregate, were the result of improper consideration of age and/or disability." It held that "Kaminsky has also not shown she was replaced by someone outside her protected class." Therefore, Kaminsky has not established the

prima facie case for either age and/or disability discrimination. She does not point to any evidence in the record that could satisfy her burden of proof as to either of these elements. Therefore, the district court properly granted summary judgment on Kaminsky's age and disability discrimination claims.

B.

To state a claim for failure to accommodate under the Rehabilitation Act, Kaminsky had to show that (1) she was disabled; (2) she was otherwise qualified for her position; (3) the VA was aware of her disability; (4) an accommodation was needed; and (5) the VA failed to provide the accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997).

Kaminsky made her initial request for a sit-to-stand desk in March 2016. "[A]n employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control." *Gerton v. Verizon S., Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005) (citing *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998)).

Kaminsky's requested accommodation was delayed due to internal processing and events outside the VA's control due to a backorder on the equipment required. Further, Kaminsky was at least partly to blame for the delay in her accommodation because she did not timely respond to emails from the VA's reasonable accommodations team. At one point, McNerney contacted Aquilina about the request because he had reached out to Kaminsky "on a number of occasions with no success" and was going to close the request if he did not hear back from her. "[T]he interactive process requires communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (citation omitted). Despite the delay in installation, the VA actively communicated with Kaminsky

throughout the process and eventually installed her accommodations in her new office. It also responded to all trouble requests she had after the installation. There is no evidence the accommodations team acted in bad faith or with any discriminatory intent. *See Kleiber*, 485 F.3d at 872 (rejecting the argument that an employer failed to engage in the interactive process where the plaintiff offered no evidence of lack of good faith). Therefore, the district court properly granted summary judgment on Kaminsky's failure to accommodate claim.

C.

To state a claim for retaliation, Kaminsky must show that (1) she engaged in a legally protected activity; (2) the VA had knowledge of her protected conduct; (2) the VA then took adverse action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Retaliation claims under the ADEA employ the same framework used in Title VII retaliation claims. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007).

To show adverse action under a retaliation claim, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . ." which would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Kaminsky's EEO complaint did not cause any legally adverse actions to be taken against her. Following Kaminsky's EEO complaint in July 2016, Kaminsky received an overall rating of "Excellent" on her annual performance review and she maintained her GS-12 salary and benefits through her retirement from the VA. Kaminsky claims that she received a disciplinary letter due to her contacting legal counsel, but she received the letter of counseling for an angry email about parking. Further, the letter of counseling in this case did

not rise to the level of a materially adverse action.  *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir.

2013); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011).

Nor was Kaminsky's relocation to HR caused by her EEO complaint.  The VA attempted

to rewrite Kaminsky's position description before eliminating her previous position and

reassigning her to HR.  Her leadership actively attempted to help her maintain her current salary

and benefits while addressing their concerns about the position.  The record clearly demonstrates

the EEO complaint was not the cause of her transfer or the elimination of her position, but rather

the leadership's concern over her qualifications and the limits of the VA's legislative authority to

perform such functions.  There is also no evidence that the hospice oversight committee or its

actions had any adverse effects on Kaminsky's employment, or that the committee was created in

response to her EEO complaint.  Therefore, the district court properly granted summary judgment

on Kaminsky's retaliation claim.

AFFIRMED.